**UNITED STATES of America,**

v.

**Tyrone SMALLWOOD, Thomas Edward Smith, Jr.**

No. CR.A. 03–245–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 2, 2003.

Brian D. Miller, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Thomas Abbenante, Pleasant Sanford Brodnax, III, Washington, DC, Ivan Darnell Davis, Office of the Federal Public Defender, Frank Salvato, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendants Tyrone Smallwood and Thomas Edward Smith, Jr. stand indicted and face trial for (1) murder while engaged in drug trafficking, in violation of 21 U.S.C. § 848(e)(1)(A), and (2) use of a firearm while engaged in a drug conspiracy, in violation of 18 U.S.C. § 924(c) & (j). Smith is additionally indicted on a charge of participating in a drug trafficking conspiracy, in violation of 21 U.S.C. § 846, a charge to which Smallwood has already pled guilty in the District of Columbia. Because the alleged murder occurred in the District of Columbia and because much of the conspiracy conduct occurred in the District of Columbia and Maryland, both defendants challenge venue and, in the alternative, seek transfer to the District of Columbia. This memorandum opinion addresses these venue and transfer issues.

Also at issue and addressed here are two additional motions brought by Smallwood stemming from his 1996 guilty plea to the drug conspiracy that is alleged against Smith in Count I and is also an element of the offenses charged against both defendants in Counts II and III. Specifically, Smallwood in these motions contends (1) that the firearms charge must be dismissed because he earlier pled guilty to the predicate drug conspiracy and (2) that his statements and evidence resulting from his cooperation, including two firearms recovered from his apartment at the time of his arrest, must be suppressed pursuant to the plea agreement he entered into in November 1996 with the United States Attorney's Office for the District of Columbia.

## I.

According to the superseding indictment,[1] Smallwood and Smith were members of a large and lucrative drug

---

1. *See United States v. Smith, Smallwood,* Criminal No. 03–245–A (E.D.Va. August 2003) (Superseding Indictment).

trafficking conspiracy that engaged in manufacturing and distributing crack cocaine and other illegal narcotics in the District of Columbia, Maryland, Virginia, and elsewhere between 1994 and 1999. This drug conspiracy is the basis for the murder and firearms charges against both defendants and is also the same conspiracy to which Smallwood pled guilty in November 1996 in the District of Columbia. Nor is Smallwood the only conspirator to have been held accountable for this conspiracy; more than a dozen co-conspirators have already been successfully prosecuted in this district for their involvement in the drug conspiracy.[2]

### a. The Drug Conspiracy

The superseding indictment charges that during the duration of the drug conspiracy Smallwood and Smith jointly maintained two residences in the Washington, D.C. metropolitan area that they used to store drugs and cash, often in large quantities—one at 50 49th Street in Washington, D.C. and the other at 7403 Hendricks Drive in Hyattsville, Maryland. Smallwood also maintained a third residence with his girlfriend at 8800 Enfield Court, Laurel, Maryland, at which location he also stored drugs and cash in connection with his participation in the conspiracy. The superseding indictment specifically charges that Smallwood and Smith and their co-conspirators committed numerous overt acts in furtherance of the conspiracy in the District of Columbia, Maryland, and Virginia, including the following:

(1) Defendants and other conspirators manufactured crack cocaine and distributed crack cocaine and other illegal narcotics at various locations in the Washington, D.C. metropolitan area throughout the duration of the conspiracy. Specifically, in 1995 and 1996, defendants and another conspirator obtained and distributed between one and two kilograms of crack cocaine, valued at approximately $23,000 per kilogram, each week.

(2) Smith purchased a 1992 Toyota Land Cruiser in Silver Spring, Maryland on September 26, 1994, registered the vehicle at the Virginia Department of Motor Vehicles under the alias "Anthony Young" on March 7, 1995 to an address in Manassas, Virginia, the home of the parents of a conspirator, and used the vehicle to engage in drug trafficking activities.

(3) In February 1996, Smallwood, and conspirators Walter Fleming and Akil Nuridden carried firearms in their search for another conspirator believed to have stolen drugs from Fleming and thereafter, Fleming shot the conspirator.

(4) Conspirator Nuridden possessed with the intent to distribute approximately 267 grams of crack cocaine in his vehicle parked at his home in Alexandria, Virginia on July 11, 1996.

(5) Conspirator Fleming stored over 1000 grams of cocaine, $35,000 in cash, and a firearm at a residence in Silver Spring, Maryland on July 11, 1996.

(6) Conspirator Fleming purchased a 1997 Cadillac Deville at an automobile dealership in Arlington, Virginia under the alias "Jerry Booker" on April 11, 1997 and used it to engage in drug trafficking activities.

---

**2.** *See, e.g., United States v. Akil Nuridden,* Criminal No. 99–178–A (E.D.Va. July 8, 1999) (Plea Agreement); *United States v. Jerry Book-er,* Criminal No. 98–452–A (E.D.Va. January 21, 1999) (Plea Agreement).

(7) Conspirator Fleming possessed a loaded firearm in his vehicle in Washington, D.C. on September 26, 1997.

### b. Shelton's Murder

Smallwood and Smith are also charged in the superseding indictment with the murder of Conrad Shelton in Washington, D.C. on February 11, 1996 while they were engaged in the drug trafficking conspiracy. More specifically, the superseding indictment charges that Smallwood and Smith hired Shelton to clean their Washington, D.C. apartment and perform other minor cleaning and repair jobs in exchange for either drugs or money. It is further alleged that Smith reportedly "roughed up" Shelton several times because he and Smallwood believed Shelton was stealing money from them. Then, in January 1996, while Smallwood and Smith were away on a skiing trip, Smallwood received a telephone call from his girlfriend, Molita Bryant, informing him that Smallwood and Smith's Washington, D.C. apartment had been broken into and money, drugs, and guns had been stolen. Smallwood and Smith suspected that Shelton's brother had learned from Shelton the location and contents of the apartment and was responsible for the robbery. Based on their belief that Shelton was responsible for the robbery, Smallwood and Smith and a coconspirator, Green, met with Shelton at defendants' Washington, D.C. apartment on February 11, 1996 at which time they severely beat Shelton and threatened him by pointing a gun at his head. Then, all four individuals—Smallwood, Smith, Shelton, and Brown—left the apartment and drove in a rental car to the corner of 5th and O Streets, N.W., Washington, D.C. While Brown waited in the car, Smallwood and Smith took Shelton into a nearby alley and shot him in the head. To ensure that they had killed Shelton, Smallwood and Smith then shot him several more times. The autopsy report revealed that Shelton had been shot with bullets from three different guns. The superseding indictment also alleges that during the course of the murder Smallwood accidentally shot himself in the foot.

### c. Smallwood's 1996 Plea

Between May and November 1996, Smallwood, as part of the alleged drug trafficking conspiracy, sold crack cocaine to individuals cooperating with law enforcement authorities on four occasions. Two of these sales were made within 1,000 feet of the Anthony Bowen Elementary School in Washington, D.C. As a consequence of these sales, Smallwood was arrested at his residence in Hyattsville, Maryland on November 4, 1996, at which time FBI agents seized crack cocaine, money, two firearms, ballistic vests, and Smith's Toyota Land Cruiser. Smallwood was thereafter charged with several drug offenses, including the drug trafficking conspiracy Smith is charged with here. At the time, Smallwood was not charged with Shelton's murder.

On November 15, 1996, Smallwood entered into a plea agreement with the United States's Attorney's Office for the District of Columbia in which he pled guilty to the unlawful distribution of more than fifty (50) grams of crack cocaine within 1000 feet of a school on September 3, 1996. As part of the agreement, defendant Smallwood promised to cooperate with the government in its investigation of the drug conspiracy and the government in turn agreed that it would not use any information or materials provided by Smallwood against him in a later criminal proceeding.[3]

---

**3.** Paragraph 15 of the plea agreement pro-      vides as follows:

Smallwood's cooperation, as well as that of other conspirators, led to Smith's arrest. In July 2000, Smallwood received a reduction in his sentence based on his cooperation.

### d. The Firearms

The two firearms recovered from Smallwood's and Smith's residence in Hyattsville, Maryland at the time of Smallwood's arrest were subjected to ballistics investigation which confirmed that these firearms were not used in Shelton's murder.

## II.

■ Proper venue in a criminal prosecution is a right guaranteed by the United States Constitution.[4] This right has been codified in the Federal Rules of Criminal Procedure, which provide as follows: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." *See* Rule 18, Fed.R.Crim.P. Thus, in criminal cases, the government bears the burden of establishing by a preponderance of the evidence that venue is proper on each count of the indictment. *See United States v. Robinson*, 275 F.3d 371, 378 (4th Cir.2001) ("When multiple counts are alleged in an indictment, venue must be proper on each count."); *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir.2000) (same). Given this, the propriety of venue in this district must be separately assessed for each count of the superseding indictment.

■ Venue in this district with respect to Count I of the indictment—conspiracy to distribute drugs—is plainly proper.[5] This conclusion follows from the settled principle that venue on a conspiracy charge may be laid "in any district in which a conspirator performs an overt act in furtherance of the conspiracy or performs acts that effectuate the object of the conspiracy," even if the defendant charged with the conspiracy never entered the district. *See Hyde v. United States*, 225 U.S. 347, 356–57, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); *United States v. Mitchell*, 70 Fed. Appx. 707, 711 (4th Cir.2003); *Bowens*, 224 F.3d at 311 n. 4 ("In determining venue for a particular offense, not only is the conduct of the defendant himself considered, but the conduct of anyone with whom he shares liability . . . ."). While the alleged drug conspiracy in this instance occurred largely in the District of Columbia, at least three overt acts occurred in the Eastern District of Virginia. Specifically, (i) Akil Nuridden, a co-conspirator, possessed 267 grams of crack cocaine in his car parked at his residence in Alexandria, Virginia, (ii) Walter Fleming, a co-conspirator, purchased a vehicle that was then used to further the drug conspiracy in Arlington, Virginia, and (iii) Smith registered a vehicle in Virginia that was then used to further the conspiracy. These overt acts in Virginia make unmistakably clear that venue in this district is proper. The argument that venue is improper here because the drug conspiracy "barely brushes" this

---

The United States agrees that, subject to the provisions of this plea agreement, the United States will not use against your client, in any criminal proceeding, any of the information or materials provided to the United States by your client.

4. *See* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the *said* Crimes shall have been committed."); U.S. Const. amend. IV (stating that

a criminal defendant has a right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed."); *see also United States v. Bowens*, 224 F.3d at 308.

5. Only Smith has been charged on Count I. Smallwood pled guilty to the drug conspiracy in the District of Columbia in 1996.

district is unpersuasive, for it is settled that "[t]he overt act or acts necessary to support venue in a conspiracy case do not have to be substantial." *See Mitchell,* 70 Fed.Appx. at 711.

■ Determining the propriety of venue for Counts II and III requires more analysis. To begin with, where, as here, there is no express statutory venue provision, proper venue "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946); *Bowens,* 224 F.3d at 308. Thus, to determine proper venue, a court "must identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez–Moreno,* 526 U.S. 275, 279, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999); *United States v. Robinson,* 275 F.3d 371, 378 (4th

Cir.2001); *Bowens,* 224 F.3d at 308–09. More specifically, it is clear that venue may lie in any district in which an "essential conduct element" of the offense occurred;[6] venue is not proper in a district in which a mere circumstance element occurred.[7] Therefore, to determine whether venue in a particular district is proper, a court must first examine the statute defining the offense to identify the essential conduct elements of the offense and where they occurred.[8]

■ Based on these principles, venue in this district on Count II—murder while engaged in drug trafficking—is plainly proper. The relevant essential conduct elements of the offense[9] are: (i) the engaging or working in furtherance of a continuing criminal enterprise to distribute drugs or a violation of a drug offense punishable under § 841(b)(1)(A) or § 960(b)(1) and (ii) murder. Clearly, the alleged drug conspiracy is an essential conduct element of

6. *See Rodriguez–Moreno,* 526 U.S. at 280–83, 119 S.Ct. 1239 (stating that either of the two distinct conduct elements of an offense in violation of § 924(c)(1) may serve as a basis for venue); *Bowens,* 224 F.3d at 309 ("[V]enue is limited to the place where the essential conduct elements occur, without regard to the place where other essential elements of the crime occur...."); *Robinson,* 275 F.3d at 378 ("Venue on a count is proper only in a district in which an essential conduct element of the offense took place.").

7. *See Rodriguez–Moreno,* 526 U.S. at 280–83, 119 S.Ct. 1239 (stating that on a charge for money laundering in *United States v. Cabrales,* 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998), the "existence of criminally generated proceeds was a circumstance element of the offense," and thus not a basis for venue); *United States v. Villarini,* 238 F.3d 530, 535 (4th Cir.2001) (same).

8. By way of example, in *Bowens,* 224 F.3d at 309, the Fourth Circuit found that "there are four essential elements of a harboring offense [under 18 U.S.C. § 1071]:(1) that a federal

warrant has been issued for a fugitive's arrest, (2) that the defendant knew that the warrant had been issued, (3) that the defendant harbored or concealed the fugitive, and (4) that the defendant intended to prevent the fugitive's discovery or arrest." Because the only essential conduct element of the offense is "the act of harboring or concealing the fugitive," venue is limited to the district or districts in which "acts of harboring or concealing [took] place." *See id.*

9. The statute defining the offense, 21 U.S.C. § 848(e)(1)(A), provides as follows:

> [A]ny person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

this murder offense. Given that overt acts in furtherance of this conspiracy occurred in this district, it follows that an essential conduct element of the offense charged in Count II occurred in this district. *See Rodriguez–Moreno*, 526 U.S. at 280–83, 119 S.Ct. 1239; *Bowens*, 224 F.3d at 309. And further, because only one essential conduct element of the offense must occur in this district to lay venue here, the argument that venue is improper because Shelton was murdered in the District of Columbia is unpersuasive. This is so because where, as here, "a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." *See Rodriguez–Moreno*, 526 U.S. at 282, 119 S.Ct. 1239 (citing *United States v. Lombardo*, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916)).

■ Next, venue in this district on Count III—use of a firearm while engaged in a drug conspiracy, in violation of § 924(c)(1)(A) [10]—is also plainly proper for essentially similar reasons. The relevant essential conduct elements of this offense are: (i) the use of a firearm, contemporaneous with (ii) the commission of a crime of violence or a drug trafficking crime.

*See Rodriguez–Moreno*, 526 U.S. at 280, 119 S.Ct. 1239 ("In sum, we interpret § 924(c)(1) to contain two distinct conduct elements—as is relevant to this case, the 'using and carrying' of a gun and the commission of a kidnaping."); *Robinson*, 275 F.3d at 378 ("The conduct elements of the § 924(c) violation, in turn, are (a) the use of a firearm and (b) the commission of a crime of violence."). Furthermore, the essential conduct elements of a § 924(j) [11] violation are (i) murder and (ii) the commission of a § 924(c) violation.[12] *See Robinson*, 275 F.3d at 378 ("Thus, the conduct elements of a § 924(j) violation are (1) the use of a firearm to cause the death of a person and (2) the commission of a § 924(c) violation."). Because overt acts of the drug trafficking conspiracy occurred in this district and because this conspiracy is an essential conduct element of the offense, venue for the offense charged in Count III is proper here.

### III.

■ The propriety of venue in this district does not foreclose the transfer of this case to another district "for the convenience of the parties and witnesses and in the interests of justice." Rule 21(b), Fed.

**10.** This provision provides as follows:
[A]ny person who, during and in relation to any crime of violence or drug trafficking crime... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–
(i) be sentenced to a term of imprisonment of not less than 5 years;
(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

**11.** This provision provides as follows:

A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall–
(1) if the killing is murder (as defined in section 1111), be punished by death or by imprisonment for any terms of years or for life; and
(2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

**12.** Courts hold that § 924(j) does not set forth a discrete crime from § 924(c). *See, e.g., United States v. Battle*, 289 F.3d 661, 666 (10th Cir.2002); *United States v. Davis*, 2003 WL 21276363, at *2, 2003 U.S. Dist. LEXIS 9208, at *5 (E.D. La. June 2, 2003).

R.Crim.P. The legal principles governing transfer are well-established. Controlling authority makes clear that it is within the discretion of the trial court to determine whether a Rule 21(b) transfer is appropriate. *See United States v. Heaps*, 39 F.3d 479, 482 (4th Cir.1994); *United States v. Espinoza*, 641 F.2d 153, 162 (4th Cir.1981). And, to guide the exercise of this discretion, the Supreme Court has enumerated ten factors for courts to consider: (i) the location of the defendant; (ii) the location of possible witnesses; (iii) the location of the events at issue; (iv) the location of documents and records; (v) the disruption of defendant's business; (vi) the expense to the parties; (vii) the location of counsel; (viii) the relative accessibility of place of trial; (ix) the docket condition of each district; and (x) any other special elements which might affect the transfer. *See Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964); *see also Heaps*, 39 F.3d at 483.

█ Smallwood and Smith contend that assuming *arguendo* that venue is proper, it is appropriate to transfer this case to the United States District Court for the District of Columbia. Yet, most of the *Platt* factors, applied here, weigh con-vincingly against transfer given the close geographic proximity (approximately 10 miles) of the federal courthouses in Alexandria, Virginia and the District of Columbia.[13] This close proximity effectively eliminates from the transfer calculus the usual considerations of convenience, accessibility, and expense. Further, reflecting this proximity and also weighing against transfer is the fact that more than twelve co-conspirators of Smallwood and Smith, including their main cocaine supplier, have already been successfully prosecuted in this district.[14] In such circumstances, it is reasonable for the government to conserve resources by charging and trying the remaining co-conspirators in this district.[15] This factor significantly distinguishes this case from *United States v. Ruffin*[16] on which Smallwood and Smith rely, as it does not appear that any conspirators had already been prosecuted in this district at the time of the transfer motion in that case.

The district's docket conditions also do not militate in favor of transfer. There is no showing that a failure to transfer this case to the District of Columbia will delay the trial. To the contrary, statistics reflect that this district, on average, provides a speedier trial.[17] Moreover, Smallwood

**13.** *See United States v. Elson*, 968 F.Supp. 900, 903 (S.D.N.Y.1997) (finding that the close proximity between the courthouses in the Southern District of New York and the Eastern District of New York counseled against venue transfer); *see also Heaps*, 39 F.3d at 482–83 (finding that the factors set out in *Platt* do not militate for venue transfer); *United States v. Lindh*, 212 F.Supp.2d 541, 551–52 (E.D.Va.2002) (same).

**14.** *See supra* note 2. The record does not reflect whether any co-conspirators, apart from Smallwood, were prosecuted for this drug conspiracy in the District of Columbia prior to this case.

**15.** *Cf. United States v. Smith*, 412 F.Supp. 1, 4 (S.D.N.Y.1976) ("[T]he interests of justice and judicial economy would be enhanced by trying all defendants in the same district."); *United States v. Donato*, 866 F.Supp. 288, 294 (W.D.Va.1994) (denying venue transfer so as to allow the action to proceed "in a unified fashion").

**16.** *See United States v. Ruffin*, Criminal No. 92–39–A (E.D.Va. March 6, 1992) (Order) (transferring case against thirteen co-conspirators to the District of Columbia).

**17.** The median time from filing to disposition on a criminal felony charge in 2002 in this district was 4.7 months, whereas it was 9.6 months in the District of Columbia. *See* Federal Court Management Statistics, Administrative Office of the United States Courts (2002).

and Smith delayed two and a half months after arraignment before moving for transfer and, at the time of the motion, the trial was set for December 8, 2003. Although the trial has now been postponed to February 9, 2004 at the request of Smallwood and Smith, their delay in moving for transfer is nonetheless a factor that weighs against transfer.[18]

Eight of the first nine *Platt* factors plainly weigh against transfer and one (factor (v)) has no relevance here. But this does not end the analysis, for the tenth factor announced in *Platt* is a catch-all designed to make clear that the first nine are not exhaustive and that courts considering transfer motions must always consider whether the case presents "any other special elements" that might affect the transfer analysis. *Platt*, 376 U.S. at 244, 84 S.Ct. 769. Such a special element exists in this case. It is Smallwood's plea agreement with the United States Attorney for the District of Columbia in connection with his 1996 plea of guilty to the drug conspiracy that is also alleged in each count of the superseding indictment in this case. Pursuant to that plea agreement, Smallwood's statements and evidence provided by him in the course of his cooperation may not be used to prosecute him further.[19] Yet, this is precisely what the government seeks to do in this case. To justify this, the government cites a further provision of the plea agreement to the effect that the agreement binds only the United States Attorney for the District of Columbia, and not other prosecutors in other jurisdictions, including this district.[20] This situation invites the argument by Smallwood that the government chose this venue precisely to avoid the strictures of his plea agreement and that transfer is therefore required in the interests of justice.[21] In the end, the government's motives for choosing this venue are irrelevant.[22] What matters is fairness—fairness

18. *See United States v. Kopituk*, 690 F.2d 1289, 1321 n. 29 (11th Cir.1982) (stating that defendant's delay in bringing his motion to transfer venue until three weeks before trial "was a sufficient reason in and of itself justifying its denial").

19. Paragraph 14 of the plea agreement provides as follows:

The United States agrees that, subject to the provisions of this plea agreement, the United States will not use against your client, in any criminal proceeding, any of the information or materials provided to the United States by your client.

20. Paragraph 18 of the plea agreement provides as follows:

This agreement binds only the United States Attorney's Office for the District of Columbia. It does not bind any other United States Attorney's Office or any other office or agency of the United States Government. . . .

21. The government argues that it is not sensible to conclude that it is avoiding the strictures of the plea agreement by prosecuting defendants in this district because the United States Attorney in the District of Columbia could avoid the agreement through the appointment of a special attorney to prosecute the case. *See* 28 U.S.C. § 515–519. This argument, apart from lacking relevance, is based on the doubtful premise that such appointment would successfully avoid the plea agreement's strictures.

22. With respect to motive, Smallwood and Smith also argue that the government seeks to prosecute this matter here because juries and judges in this district are more favorable to the government in criminal cases. No empirical support is offered for this argument or for its obverse, namely that juries and judges in the District of Columbia are more favorable to criminal defendants. There is no reason or evidence, proffered or discernible, why these defendants would not receive a fair trial from juries and judges in both jurisdictions. Absent this, the argument is as irrelevant to transfer as it is obnoxious. *See United States v. Juarez*, 573 F.2d 267, 280 (5th Cir.1978) (finding that the district court did not abuse its discretion by denying defendants' motion

to both parties.[23] Fairness requires that Smallwood receive the benefit of his plea bargain, namely that the statements and evidence he provided in the course of his cooperation not be used against him by the United States Attorney for the District of Columbia or other prosecutors in other jurisdictions cooperating with the United States Attorney for the District of Columbia in the investigation connected with the plea.[24] Precisely this cooperation occurred in this case between the United States Attorneys for the District of Columbia and the Eastern District of Virginia. Indeed, Smallwood met with agents in the Eastern District of Virginia to cooperate pursuant to his plea agreement. In these circumstances, the United States Attorney for the Eastern District of Virginia must also be bound by the strictures of Smallwood's plea agreement.[25] For this reason, this aspect of the case does not weigh in favor of transfer.[26]

to transfer venue because a more lenient jury could have been empaneled in a different district).

23. See Rule 21(b), Fed.R.Crim.P. (indicating that the Rule is rooted in "interests of justice"); United States v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944) (stating that the constitutional requirement that a defendant be tried in the district in which the offense was committed is rooted in fairness concerns); United States v. Coffee, 113 F.Supp.2d 751, 759 (E.D.Pa.2000) (stating that "principles of fairness [are] embedded in that Rule [21(b) ]").

24. Although fairness to the government requires that it is also entitled to rely on the terms of the agreement that make clear that the agreement does not bind prosecutors outside the District of Columbia, that provision fairly read, does not extend to prosecuting jurisdictions acting in privity with, as the agent of, or in close cooperation, with the United States Attorney's Office for the District of Columbia concerning the subject conspiracy. To hold otherwise would lead to unfair and untoward results; it would allow the government to avoid the strictures of a plea agreement by handing a matter off to another prosecuting jurisdiction with which it was already cooperating on the subject matter of the plea. Although no authority directly supports this principle, contract principles govern the interpretation of the plea agreement and hold that a party acting as the agent of a party to a contract is bound by the terms of the contract. See United States v. Burns, 990 F.2d 1426, 1433 (4th Cir.1993) (applying private contract principles to the interpretation of plea agreements); United States v. Conner, 930 F.2d 1073, 1076 (4th Cir.1991) (same); Gerald M. Moore & Son, Inc. v. Drewry, 251 Va. 277, 279, 467 S.E.2d 811 (1996) (stating that an agent may be bound by a contract "to which he is not a party, but to which his principal is a party" (citing Allen Realty Corp. v. Holbert, 227 Va. 441, 450, 318 S.E.2d 592 (1984))).

25. Smallwood offers two additional, yet unpersuasive, arguments that the United States Attorney in this district is bound by the plea agreement. First, he contends that the agreement's numerous references to the obligations of the "government" and the "United States" show that the agreement binds the government at large, not merely the District of Columbia. This contention is unconvincing because paragraph 18 explicitly limits the reach of the agreement to the District of Columbia. See United States v. Gezen, 1992 WL 289, at *2, 1992 U.S.App. LEXIS 44, at *8 (4th Cir. Jan. 3, 1992) (holding that a plea agreement binds the entire federal government, unless it explicitly indicates otherwise); United States v. Harvey, 791 F.2d 294, 303 (4th Cir.1986) (same). Second, he contends that the second sentence of paragraph 18 extends the scope of the agreement by stating that the United States Attorney in this and other districts may only prosecute Smallwood for "offenses committed in their respective jurisdictions." This is a misreading of the sentence; properly read, it simply confirms that the agreement binds only the United States Attorney for the District of Columbia.

26. It must also be noted that the government, in accordance with the terms of the plea agreement, may seek to be freed from its obligations under the agreement if it shows by a preponderance of the evidence that Smallwood breached his plea agreement obligations by refusing to cooperate or knowingly

In sum, the pertinent transfer factors, applied here, confirm that transfer of this case to the District of Columbia is unwarranted.

## IV.

■ In an argument related to his venue challenge, Smallwood contends that the government may not rely on the overt acts of co-conspirators in the Eastern District of Virginia to establish venue for the § 924(c) count against him because he previously pled guilty to the predicate drug conspiracy in November 1996 and cannot now, consistent with double jeopardy principles, be charged again for the drug conspiracy offense. In support, Smallwood cites § 924(c) itself which creates a distinct offense for "any person who, during and in relation to any crime of violence or drug trafficking crime... *for which the person may be prosecuted in a court of the United States,* uses or carries a firearm...." 18 U.S.C. § 924(c)(1)(A) (emphasis added).

According to Smallwood, this language makes clear that he may not be charged under § 924(c) because he cannot now be prosecuted for the predicate drug conspiracy to which he has already pled guilty.[27]

Smallwood's argument misreads the statute. The language he relies on does not require that the prosecution for the conspiracy be contemporaneous or later than the § 924(c) prosecution; rather, the statutory language simply requires that the drug conspiracy relied on to support the § 924(c) violation be subject to prosecution in a federal court. *See United States v. Collins,* 40 F.3d 95, 101 (5th Cir.1994) ("Section 924(c)(1) requires that the underlying offense be a federal crime...."). It does not matter whether that prosecution has already occurred, has yet to occur, or is occurring contemporaneously with the § 924(c) prosecution. The only requirement for contemporaneity in § 924(c) is that the defendant use or carry

---

providing false or misleading information in the course of his cooperation. Paragraph 8 of the plea agreement provides that if Smallwood breaches the agreement, "then the Government will be free from its obligations under the agreement, and [Smallwood] shall be fully subject to criminal prosecution for any and all crimes which he has committed." *See United States v. Cook,* 41 Fed.Appx. 629, 630 (4th Cir.2002) (stating that a party seeking release from its obligations under a plea agreement must show a breach by a preponderance of the evidence); *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991) (same). The government in this case has indicated that it may seek release from its obligations in this district. Nothing in Smallwood's plea agreement requires that such an issue be presented and resolved solely by the United States District Court for the District of Columbia; it may appropriately be resolved here.

**27.** For the sake of clarity, it is worth noting that neither Smallwood nor Smith argues that the Double Jeopardy Clause prevents the government from charging a defendant, in the same indictment, with a § 924(c) violation, as

well as with the predicate drug conspiracy offense under 21 U.S.C. § 846. Such an argument would clearly fail under the test elucidated by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), given that each statute "requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180; *see also United States v. Davis,* 306 F.3d 398, 418 (6th Cir.2002) ("Because Congress expressly provided that courts may impose punishment for a violation of § 924(c) in addition to the punishment imposed for the predicate felony, Defendant's double jeopardy arguments lack merit."); *United States v. Studifin,* 240 F.3d 415, 418 (4th Cir.2001) (applying the *Blockburger* double jeopardy test to defendant's contention that sentences under both § 924(c) and § 924(e) violate the Double Jeopardy Clause); *United States v. Pena–Gonzalez,* 62 F.Supp.2d 366, 370 (D.P.R.1999) ("[E]ven examining them under the *Blockburger* analysis, section 846 and section 924 each requires proof of a different fact than the other.").

the firearm "during and in relation to" the drug conspiracy. 18 U.S.C. § 924(c)(1)(A).

In sum, Smallwood may be prosecuted for a § 924(c) violation, even though he has already been successfully prosecuted for the predicate drug offense. Moreover, neither the statute nor the Double Jeopardy Clause bars reliance on the overt acts of the predicate drug conspiracy as a venue basis for the § 924(c) charge in the Eastern District of Virginia.

## V.

Smallwood's motion in limine to suppress all statements and evidence resulting from his cooperation with the government pursuant to the plea agreement entered into in November 1996 in the United States District Court for the District of Columbia is properly deferred pending a motion by the government to be freed from its obligations under the plea agreement as a consequence of Smallwood's breach. If the government files and is successful on such a motion, Smallwood's motion to suppress will be denied. If, however, the government does not file such a motion or the motion is unsuccessful, then Smallwood's motion to suppress will be granted because the government is bound by the terms of the plea agreement and hence may not use against Smallwood any of the information or material he provided to the government in the course of his earlier cooperation.

## VI.

■ Smallwood's motion to suppress the two firearms recovered from his and Smith's Hyattsville, Maryland residence may also be rendered moot in the event the government prevails in its effort to be released from its obligations under the plea agreement based on Smallwood's failure to provide truthful cooperation. Even assuming this does not occur, Smallwood's motion in limine to suppress the use of the firearms cannot succeed because the firearms stand on different footing from his statements. Contrary to Smallwood's argument, his plea agreement nowhere precludes the government from using these firearms in a subsequent prosecution of him. Instead, the plea agreement clearly reflects that the government's agreement relating to the firearms was limited to the following: The government agreed that *at the time of the plea*—November 1996—it had no evidence that the firearms belonged to Smallwood or that they were used to facilitate drug crimes and hence the government would not seek a sentence enhancement for the conspiracy conviction under U.S.S.G. § 2D1.1(b)(1).[28] In other words, the government's agreement relat-

**28.** Specifically, paragraph 9(b) of the plea agreement provides as follows:

> Your client acknowledges that, on November 4, 1996, two firearms were recovered during the execution of the search warrant at your client's residence located at 7403 Hendricks Drive, Hyattsville, Maryland. Other than your client's statement to law enforcement agents that one of the firearms belonged to him, however, the Government has no evidence to establish a nexus between your client and the firearms recovered from his residence. Therefore, the Government agrees that, pursuant to § 1B1.8(a) of the Sentencing Guidelines, it will not advocate that the firearms found

> during the execution of the search warrant constitute specific offense characteristics pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines, which otherwise requires that a defendant's offense level be increased by two levels. The government further agrees that it is not aware of any evidence that the firearms found in your client's home were used to facilitate the narcotics trafficking offenses described and acknowledged by your client in the factual proffer.

> In a footnote, the agreement provides that "[n]o firearms were recovered from the defendant's bedroom or any other area where the government has evidence that the defendant exercised dominion or control."

ed solely to whether it would rely on the firearms in seeking a two-level sentence enhancement for the conspiracy conviction. Significantly, nothing in the agreement addresses or limits the government's use of the firearms in a subsequent prosecution of Smallwood. Furthermore, there is no basis, at this time, to exclude the firearms on grounds that they are irrelevant. The firearms may be relevant even though the plea agreement established that the government had no evidence in November 1996 that the firearms were used to facilitate the drug conspiracy and a ballistics investigation confirmed that the firearms were not used to kill Shelton. The issue of the firearms' relevancy will be revisited at trial.

An appropriate order has issued and an additional order will be issued setting forth any additional rulings in this memorandum opinion.