**UNITED STATES of America**

v.

**Tyrone SMALLWOOD, Thomas Edward Smith, Jr.**

**No. CR.A. 03–245–A.**

United States District Court, E.D. Virginia, Alexandria Division.

April 2, 2004.

---

Brian D. Miller, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Thomas Abbenante, Washington, DC, Lana Manitta, Marin, Arif, Petrovich & Walsh, Springfield, Ivan Darnell Davis, Office of the Federal Public Defender, Frank Salvato, Alexandria, VA, for Defendants.

*MEMORANDUM OPINION*

ELLIS, District Judge.

Defendants Tyrone Smallwood and Thomas Edward Smith, Jr. were indicted and convicted following a jury trial for (i) the murder of Conrad Shelton in Washington, D.C., a murder they committed while engaged in drug trafficking, in violation of 21 U.S.C. § 848(e)(1)(A), and (ii) the use of a firearm in connection with a drug conspiracy, in violation of 18 U.S.C. § 924(c) and (j). Smith was also separately charged and convicted of conspiring to traffic in drugs in violation of 21 U.S.C. § 846. Although Smallwood was a co-conspirator in this drug conspiracy, he was not charged with this offense in this case because he had already pled guilty to this offense in the United States District Court for the District of Columbia in November 1996. *See United States v. Smallwood,* Criminal No. 96–341–02 (D.D.C. November 14, 1996) (Plea Agreement).

By pretrial motion Smallwood sought to suppress the use of statements and evidence he contends were derived from information he provided to the government pursuant to his cooperation obligation under the Plea Agreement entered into with the United States Attorney's Office for the District of Columbia in 1996. Because the Plea Agreement conferred immunity on Smallwood for information provided pursuant to his cooperation obligation, the suppression motion presented the question whether Smallwood was granted both use and derivative use immunity under the terms of the Plea Agreement, thus entitling him to an evidentiary hearing in this case pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) and its progeny.[1] This Memorandum Opinion records the reasons for the denial of Smallwood's claim of derivative use immunity.

1. In *Kastigar,* the Supreme Court upheld the power of the government to compel a witness'

## I.

Only a brief recitation of the facts pertinent to the instant motion are recounted here.[2] The trial record reflects that Smallwood and Smith were members of a drug trafficking conspiracy that manufactured and distributed drugs—chiefly crack cocaine—in the District of Columbia, Maryland, Virginia, and elsewhere between 1993 and 1999. From May to November 1996, Smallwood, as part of the drug trafficking conspiracy, sold crack cocaine to individuals cooperating with law enforcement authorities on four occasions. Two of these sales were made within 1,000 feet of an elementary school in Washington, D.C.

Smallwood and Smith were both arrested for their involvement in the drug conspiracy on November 4, 1996, in the course of a search of their Hyattsville, Maryland residence conducted by the Federal Bureau of Investigation (FBI). Numerous items were seized from their residence on this occasion, including a quantity of crack cocaine, United States currency, two firearms, ballistic vests, and Smith's Toyota Land Cruiser. After being detained briefly, Smith was released from custody owing to a confusion regarding his identity. Smallwood, however, opted to enter into a plea agreement with the United States Attorney's Office for the District of Columbia following his arrest. Specifically, on November 14, 1996, Smallwood pled guilty to one count of unlawful distribution of more than fifty grams of crack cocaine within 1000 feet of an elementary school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 860.

As part of the plea agreement, Smallwood agreed to cooperate with the government in its continuing investigation of the drug conspiracy and the government, in turn, agreed that it would not use any of the information or materials provided by Smallwood in the course of his cooperation against him in a later criminal proceeding. Specifically, paragraph 14 of the plea agreement provides, in pertinent part, that

> [t]he United States agrees that, subject to the provisions of this plea agreement, the United States will not use against your client, in any criminal proceeding, any of the information or materials provided to the United States by your client.

Smallwood's cooperation, as well as that of other co-conspirators, ultimately led to Smith's arrest,[3] and indeed, more than a dozen co-conspirators have been successfully prosecuted in this district since 1996 for their involvement in this drug conspiracy.[4] Additionally, one co-conspirator, An-

---

[2] self-incriminating testimony in exchange for the grant of use and derivative use immunity under 18 U.S.C. § 6002. *See Kastigar,* 406 U.S. at 448, 92 S.Ct. 1653. In that situation, where both use and derivative use immunity is granted under the statute, district courts must hold a *"Kastigar* hearing to allow the government the opportunity to demonstrate that all its evidence came from sources independent of the compelled testimony." *Id.*

2. For a more detailed statement of the facts underlying the subject drug conspiracy and murder, see *United States v. Smallwood,* 293 F.Supp.2d 631 (E.D.Va.2003) (denying defendants' motion to transfer venue and to dismiss the firearms charge and deferring ruling on defendants' motion to suppress statements) and *United States v. Smallwood,* 299 F.Supp.2d 578 (E.D.Va.2004) (granting in part and denying in part the government's motion in limine to admit statements of the decedent on the day of the murder).

3. In July 2000, Smallwood received a reduction in his District of Columbia federal sentence, pursuant to Rule 35(b), Fed.R.Crim.P., based on his cooperation with law enforcement authorities under the 1996 plea agreement.

4. *See, e.g., United States v. Jerry Booker,* Criminal No. 98–452–A (E.D.Va. Jan. 21, 1999)

thony Brown, pled guilty to aiding and abetting the murder of Conrad Shelton while engaged in a crack cocaine distribution conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A). *See United States v. Brown,* Criminal No. 03–612–A (E.D.Va. Dec. 30, 2003) (Plea Agreement).

In this case, Smallwood filed a pretrial motion to suppress any and all statements and evidence resulting from his cooperation with the government pursuant to the plea agreement entered into in November 1996 with the United States Attorney's Office for the District of Columbia. He further requested an evidentiary hearing to determine the extent to which the information he provided to the government in the course of his cooperation was used to build the case against him in this prosecution. The government, in response to Smallwood's motion to suppress, argued (i) that the 1996 plea agreement bound only the United States Attorney's Office for the District of Columbia, and (ii) that Smallwood had breached the plea agreement by failing to provide truthful information to the government regarding the murder of Conrad Shelton.

The government's first argument—that the United States Attorney's Office for the Eastern District of Virginia is not bound by the terms of the 1996 plea agreement—was rejected in a Memorandum Opinion dated December 2, 2003, given that the prosecutors in this district had been acting in close cooperation with others in the District of Columbia in investigating and prosecuting the instant conspiracy. *See United States v. Smallwood,* 293 F.Supp.2d 631, 642 (E.D.Va.2003).[5] Yet, a ruling on Smallwood's motion to suppress was nonetheless deferred pending the filing of a motion by the government to be released from the terms of the 1996 plea agreement based on Smallwood's alleged breach of the agreement, together with a statement regarding whether the United States Attorney's Office for the District of Columbia joined in the motion to be released from the plea agreement.[6] *See United States v. Smallwood,* Criminal Action No. 03–245–A (E.D.Va. Nov. 24, 2003) (Order); *United States v. Smallwood, et al.,* Criminal Action No. 03–245–A (E.D.Va. Dec. 17, 2003) (Order).

Although the government thereafter filed a motion to be released from its obligations under the 1996 plea agreement, the United States Attorney's Office for the District of Columbia ultimately declined to

(Plea Agreement); *United States v. Walter Fleming,* Criminal No. 98–452–A (E.D.Va. Mar. 5, 1999) (Plea Agreement); *United States v. Akil Nuridden,* Criminal No. 99–178–A (E.D.Va. July 8, 1999) (Plea Agreement).

5. As noted in that Memorandum Opinion,

> [f]airness requires that Smallwood receive the benefit of his plea bargain, namely that the statements and evidence he provided in the course of his cooperation not be used against him by the United States Attorney for the District of Columbia *or other prosecutors in other jurisdictions cooperating with the United States Attorney for the District of Columbia* in the investigation connected with the plea.

*Id.* at 642 (emphasis added).

6. Specifically, the Memorandum Opinion provided, in pertinent part, that Smallwood's motion to suppress statements and evidence resulting from his cooperation

> [i]s properly deferred pending a motion by the government to be freed from its obligations under the plea agreement as a consequence of Smallwood's breach. If the government files and is successful on such a motion, Smallwood's motion to suppress will be denied. If, however, the government does not file such a motion or the motion is unsuccessful, then Smallwood's motion to suppress will be granted because the government is bound by the terms of the plea agreement and hence may not use against Smallwood any of the information or material he provided to the government in the course of his earlier cooperation.

*Smallwood,* 293 F.Supp.2d at 644.

join in the government's motion. Given this, the government was not released from its obligations under the plea agreement and Smallwood's motion to suppress the statements and evidence he provided in the course of his cooperation was granted in part and denied in part. *See United States v. Smallwood, et al.*, Criminal Action No. 03–245–A (E.D.Va. Jan. 9, 2004) (Order). Specifically, by Order dated January 9, 2004, Smallwood's motion to suppress was granted "with respect to any statements and evidence resulting from defendant Smallwood's cooperation during a November 3, 2000 interview in Alexandria, Virginia" and denied "with respect to the firearms recovered from defendants' apartment." *Id.*

On February 3, 2004, Smallwood filed a motion to clarify and to suppress evidence, noting, *inter alia*, that the December 2, 2003 Memorandum Opinion had provided that in the event the government was unsuccessful in its motion to be released from the 1996 plea agreement, as occurred here, Smallwood's motion to suppress would be granted with respect to "any of the information or material he provided to the government in the course of his earlier cooperation." *Smallwood*, 293 F.Supp.2d at 644. Yet, as Smallwood correctly points out, the subsequent January 9, 2004 Order expressly grants the motion to suppress only "with respect to any statements and evidence resulting from defendant Smallwood's cooperation during a November 3, 2000 interview in Alexandria, Virginia." *See United States v. Smallwood, et al.*, Criminal Action No. 03–245–A (E.D.Va. Jan. 9, 2004) (Order). In other words, the January 9 Order appears to limit the suppression of evidence in this case to Smallwood's cooperation during a November 3, 2000 interview, rather than the entire duration of his cooperation which spanned the period from November 1996 to November 2000.

In the circumstances, Smallwood requested that the January 9 Order be clarified to make clear that his motion to suppress was effectively granted with respect to all of the statements that he made to law enforcement agents during the entire period of his cooperation. He also renewed his request for an evidentiary hearing to confirm "that any evidence or statements [the government] intend[s] to prove at trial do not result from Smallwood's cooperation." The government, in response, correctly construed the January 9 Order in a broad manner, to cover all statements made by Smallwood to law enforcement agents from the entry of his plea agreement in November 1996 through his final statement to agents in November 2000. Yet, contrary to Smallwood's position that he is entitled to both use and derivative use immunity, the government claimed the 1996 plea agreement granted Smallwood only direct use immunity. In other words, the government claimed that it was prohibited from using against Smallwood in the instant prosecution only the information or materials that he provided *directly* to law enforcement agents during the course of his cooperation, and not any evidence obtained derivatively or indirectly from that cooperation. The government thus argued that a *Kastigar* hearing was unnecessary.

Following a hearing and by Order dated February 5, 2004, Smallwood's motion to clarify and to suppress evidence was granted insofar as he requested clarification that all statements made in the course of his cooperation, from November 1996 to November 2000, could not be introduced by the government in its case-in-chief at trial.[7] *See United States v. Smallwood,*

7. And indeed, the government did not seek to introduce in its case-in-chief *any* of the statements made by Smallwood to law enforcement agents during his period of cooperation.

Criminal No. 03–245–A (E.D.Va. Feb. 5, 2004) (Order). The motion was denied, however, insofar as Smallwood moved for an evidentiary hearing requiring the government to establish that none of the evidence it intended to offer against Smallwood derived or resulted from Smallwood's earlier cooperation. *See id.* Recorded here are the reasons underlying that ruling.

## II.

Smallwood's motion to suppress statements and subsequent motion for clarification are premised on two arguments, neither of which is persuasive. Specifically, Smallwood first contends that under the terms of the 1996 plea agreement, he was granted not only use immunity, as the government correctly concedes, but derivative use immunity, as well. Because of this, Smallwood next claims that the government must establish in an evidentiary hearing that the instant prosecution was based solely on evidence obtained by the government from sources independent of the statements made by Smallwood in the course of his cooperation, in accordance with the principles first announced in *Kastigar v. United States,* 406 U.S. 441, 460–61, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Both of Smallwood's arguments in this regard—that he was granted derivative use immunity under the plea agreement and that he is therefore entitled to a *Kastigar* hearing in the instant case—are unpersuasive.

In *Kastigar,* the Supreme Court upheld the power of the government to compel a witness' self-incriminating testimony in exchange for the grant of use and derivative use immunity under 18 U.S.C. § 6002.[8] *See Kastigar,* 406 U.S. at 448, 92 S.Ct. 1653. Yet, to preserve the witness' Fifth Amendment privilege against compelled self-incrimination, the government is forbidden from using "the immunized testimony or any evidence derived from it either directly or indirectly" in any subsequent prosecution of the witness. *United States v. Harris,* 973 F.2d 333, 336 (4th Cir.1992). Thus, because 18 U.S.C. § 6002 clearly extends to a witness both direct use and derivative use immunity, district courts are frequently required to hold an evidentiary hearing in cases involving § 6002 immunity to allow the government the opportunity to demonstrate that all of its evidence arises from independent sources. *See id.* In such a *Kastigar* hearing, the prosecution has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar,* 406 U.S. at 460, 92 S.Ct. 1653; *see also Harris,* 973 F.2d at 336 (recognizing that "the government bears 'the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources' ") (quoting *Kastigar,* 406 U.S. at 461–62, 92 S.Ct. 1653).

The protections afforded a compelled witness under *Kastigar* may be extended to defendants in two distinct situa-

8. Section 6002 provides, in pertinent part, as follows:

> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding... and the person presiding over the proceeding communicates with the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002.

tions, neither of which is present here. First, *Kastigar* may be implicated under 18 U.S.C. § 6002 if the government compels a defendant to testify after he invokes his privilege against self-incrimination. *See United States v. Eliason,* 3 F.3d 1149, 1153 (7th Cir.1993). This clearly has not occurred here. The second circumstance where a defendant may be entitled to a *Kastigar*-type hearing arises under principles of contract law, namely where the government promises, in a plea agreement or otherwise, not to use any information obtained directly or indirectly from a cooperating defendant against him in a subsequent criminal proceeding.[9] In this instance, because the statements made by Smallwood in the course of his cooperation were voluntary, rather than compelled, and because statutory use and derivative use immunity under § 6002 was neither sought nor granted to Smallwood at any time, the only issue presented here is whether the *Kastigar* safeguards arise under the terms of the 1996 plea agreement.[10]

In determining whether Smallwood is entitled to a *Kastigar* hearing, the inquiry must necessarily focus on the precise language and terms of the plea agreement itself. *See Pelletier,* 898 F.2d at 301–02. Indeed, "[w]hatever may be the extent of... immunity, its scope, when conferred in a plea agreement, must be circumscribed by the words of the plea agreement." *United States v. Crisp,* 817 F.2d 256, 258 (4th Cir.1987).[11] This is true because "an immunity agreement is likened to a contract between the government and the defendant, a concept universally recognized by courts faced with enforcing such agreements." *United States v. McFarlane,* 309 F.3d 510, 514 (8th Cir.2002) (citations omitted). Thus, it is unmistakably clear that general principles of contract law are to be applied in interpreting the terms of a plea agreement.[12] The Fourth

9. *See, e.g., United States v. Pelletier,* 898 F.2d 297, 301 (2d Cir.1990) (recognizing that "[t]o secure a defendant's cooperation and plea, the government may informally grant him use immunity in exchange for his cooperation" and that "a cooperation/immunity agreement is in the nature of a contract"); *United States v. Brimberry,* 744 F.2d 580, 586 (7th Cir.1984) (where, in return for a defendant's cooperation, the government "agreed to grant the defendant immunity from prosecution for all offenses that they discovered as a direct or indirect result of the defendant's statements").

10. The fact that the federal statute governing immunity for compelled witness testimony provides both use and derivative use immunity does not mean that a plea agreement granting use immunity to a particular defendant affords that defendant anything more than direct use immunity. *See United States v. Brown,* 979 F.2d 1380, 1381 (9th Cir.1992) (recognizing that "the Government is not bound by the procedures and requirements of the use immunity statute when granting immunity in the form of a contractual agreement"); *United States v. Plummer,* 941 F.2d 799, 802 (9th Cir.1991) (same).

11. *See also United States v. McFarlane,* 309 F.3d 510, 514 (8th Cir.2002) (recognizing that "the immunity agreement itself governs the scope of the immunity involved"); *United States v. Luloff,* 15 F.3d 763, 766 (8th Cir. 1994) (recognizing that when a defendant enters an informal immunity agreement with the government, rather than asserting his Fifth Amendment privilege against being compelled to incriminate himself, "the scope of informal immunity is governed by the terms of the immunity agreement"); *Pelletier,* 898 F.2d at 302 (recognizing that "the scope and consequences of the immunity conferred are governed by the terms of the agreements").

12. *See United States v. Snow,* 234 F.3d 187, 189 (4th Cir.2000) (recognizing that "principles of contract interpretation" apply to plea agreements); *United States v. Luloff,* 15 F.3d 763, 766 (8th Cir.1994) (stating that "[i]nformal immunity agreements are contractual in nature and are governed by ordinary standards of contract law") (citations omitted); *United States v. West,* 2 F.3d 66, 69 (4th Cir.1993) (stating that "entitlement of the plea agreement turns on contract principles concerning the interpretation of unambiguous

Circuit has held, for example, that where the language of a plea agreement is unambiguous, "the agreement should be interpreted and enforced accordingly." *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986); *see also Luloff,* 15 F.3d at 766 (stating that "the terms of an unambiguous informal immunity agreement should be enforced") (citations omitted). Indeed, "[n]either side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind." *Harvey,* 791 F.2d at 300.

These principles, applied here, compel the conclusion that the plea agreement covers only use immunity and does not extend to the broader derivative use immunity. By its plain terms, the agreement provides only that "the United States *will not use against your client,* in any criminal proceeding, *any of the information or materials provided to the United States by your client.*" *See* Plea Agreement (emphasis added). This prohibition extends only to "use" of information "provided . . . by" Smallwood, not to information the government may derive from such information. Had the parties intended for this provision to grant Smallwood anything other than direct use immunity, they could easily and clearly have done so, for example, by inserting into the plea agreement the simple provision that any statements or materials provided by Smallwood or any "information derived therefrom" would not be used against him "either directly or indirectly" or by adding a further or separate provision regarding derivative use immunity. They did not do so; rather, the agreement provides only that the government will not "use" any of the information provided "by" Smallwood against him in a subsequent criminal proceeding. This, without more, cannot be construed to mean anything other than that the government agreed not to use Smallwood's own statements and materials—that is, statements made and materials provided "by" Smallwood—against him.[13] Although it is true that any ambiguities in a plea agreement are to be construed in favor of the defendant,[14] no ambiguities are present here and to read an absent ambiguity into the terms of the plea agreement would be improper.[15] Instead, because the language of the plea agreement is clear and unam-

agreements"); *United States v. Burns,* 990 F.2d 1426, 1433 (4th Cir.1993) (applying private contract principles to the interpretation of plea agreements); *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991) (same).

13. *See, e.g., United States v. Pellon,* 475 F.Supp. 467, 480 (S.D.N.Y.1979) (noting that an agreement between the government and the defendant did not provide, among other things, derivative use immunity). In contrast, a statutory or contractual grant of both direct and derivative use immunity "bar[s] the use of compelled testimony as an 'investigatory lead,' and also bar[s] the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Harris,* 973 F.2d at 336–37 (quoting *Kastigar,* 406 U.S. at 460, 92 S.Ct. 1653).

14. *See United States v. McQueen,* 108 F.3d 64, 66 (4th Cir.1997) (recognizing that "the government bears a greater responsibility than the defendant for inaccuracies and ambiguities in a plea agreement").

15. *But see United States v. Plummer,* 941 F.2d 799 (9th Cir.1991) (holding that the term "use" is legally ambiguous and that "use immunity presumptively includes derivative use immunity, unless the government can demonstrate in a given case that, at the time the agreement was made, it expressly clarified that only direct use immunity was offered"); *United States v. Kilroy,* 27 F.3d 679 (D.C.Cir. 1994) (stating that "we agree with the Ninth Circuit that nothing else appearing, an informal use immunity afforded by agreement, e.g., a plea bargain, includes derivative use immunity equivalent to that afforded by the statute").

biguous, it must, under well-established principles of contract interpretation, be enforced as written.

 Accordingly, because Smallwood did not receive derivative use immunity under the terms of the 1996 plea agreement, he is not entitled to a *Kastigar* hearing in this case. *See United States v. Catano*, 65 F.3d 219, 226 (1st Cir.1995) (recognizing that a *Kastigar* hearing is unnecessary where "the only offer was an offer against direct use of the testimony and not any derivative use"). The government is, however, precluded from introducing in its case-in-chief at trial any statements or materials provided to law enforcement agents directly by Smallwood during the course of his cooperation.[16]

An appropriate Order has issued.

---

16. This does not foreclose the possibility that the government could use Smallwood's cooperating statements against him as impeachment evidence, if appropriate. Indeed, it is well-settled under Supreme Court precedent that "voluntary statements...even if otherwise inadmissible, may be used to impeach a testifying defendant." *United States v. Rowley*, 975 F.2d 1357, 1361 (8th Cir.1992) (citations omitted). But, as it turned out, the government did not seek to introduce Smallwood's statements in any respect in the course of the trial of this case, as impeachment evidence or otherwise.