**UNITED STATES of America,**
**Plaintiff,**

v.

**Jennifer WRENN, Defendant.**

**Crim. No. 01–143–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 7, 2001.

Robert A. Spencer, U.S. Attorney's Office, Alexandria, VA, for Plaintiff.

Robert Ramsey Maupin, Alexandria, VA, Harvey J. Volzer, Shaughnessy, Volzer & Gagner, Washington, DC, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Presented here on a motion *in limine* is the question whether the government can introduce at trial hearsay statements of absent declarants pursuant to Rule 804(b)(3), Fed.R.Evid., when the reason for the declarants' absence is that the state investigator who heard the statements, and through whom the government wishes to introduce the statements, made no effort to obtain the declarants' names or contact information. For the reasons stated from the bench and as elaborated herein, these hearsay statements are inadmissible because the declarants cannot be said to be "unavailable" as the Rule requires, given that the government, as the proponent of the statements, did not make a good-faith effort to procure the declarants' attendance at trial.

### I.

The indictment charges defendant Jennifer Wrenn with (i) identification fraud, (ii) encouraging aliens to remain illegally in the United States, (iii) conspiracy to commit both identification fraud and encouraging aliens to remain illegally in the United States, and (iv) money laundering. At trial, the evidence disclosed, in essence, that Wrenn owned and operated a business, Jenni Wrenn Realtors, Inc., with the purpose, *inter alia,* of preparing fraudulent residency and identification certification forms for illegal immigrants applying for Virginia driver's licenses and identification cards. More specifically, the evidence reflects that during the period from at least January 1, 1999 through February 26, 2001, defendant owned and operated Jenni Wrenn Realtors, Inc., a Virginia corporation with offices in Falls Church and Manassas Park, Virginia. The defendant's clientele included illegal aliens from states other than Virginia who came to Virginia

because they could not obtain a driver's license or identification card in their home states owing to their illegal status. Typically, these aliens paid professional drivers several hundred dollars to transport them from their home states to one of the defendant's offices. In most instances, the aliens spoke little or no English and brought with them only a foreign passport as identification.

Defendant's employees, under defendant's direction, helped the aliens complete the Virginia Department of Motor Vehicles ("DMV") identity and residency certifications with false Virginia addresses. To this end, defendant (i) used an attorney, who signed the false identity certifications, and (ii) directed her employees to sign the false residency certifications. In her capacity as a Virginia-licensed notary public, defendant notarized both the residency and identity certification forms and charged each applicant between $35 and $70, depending on the services performed. The paid drivers then transported the aliens from defendant's places of business to local DMV offices to obtain Virginia driver's licenses or identification cards.

In early 2000, DMV Special Agent Eduardo Torre, who was investigating defendant's activities, followed some of the defendant's clients, who were passengers in vehicles with out-of-state license plates, as they traveled from defendant's offices to local Virginia DMV offices. On several of these occasions, Special Agent Torre stopped and interviewed various of these persons at local Virginia DMV offices. The persons interviewed (the "declarants") made admissions against their penal interest to Special Agent Torre concerning their illegal immigration status, their out-of-state residence, and their purpose for traveling to Virginia. Special Agent Torre used the admissions as a source of information to investigate the defendant further, but did not arrest the people he interviewed. Rather, he released them without taking note of their true names, addresses, or other identifying information. As a result, the government does not know the names, home addresses, or locations of the declarants who made the admissions to Special Agent Torre. Without such information, the government was unable to identify the declarants and consequently did not depose them or secure their direct testimony at trial. In its motion *in limine*, the government argued that it should be allowed to introduce the declarants' statements about their immigration status, out-of-state residence, and reason for coming to Virginia through Special Agent Torre by invoking the hearsay exception for statements against interest. *See* Fed.R.Evid. 804(b)(3) (establishing the evidentiary standard for admitting statements against interest). For that exception to apply, the Federal Rules of Evidence require that the declarants be "unavailable as witnesses." *See* Fed.R.Evid. 804(b). Thus, the question presented here is whether the declarants were "unavailable" within the meaning of the Rule.

## II.

■ Hearsay statements may be admitted under Rule 804(b)(3) if (i) the declarant is "unavailable," (ii) the statement is genuinely adverse to the declarant's penal or proprietary interest, and (iii) corroborating circumstances clearly indicate the trustworthiness of the statement. *See United States v. Bumpass*, 60 F.3d 1099 (4th Cir.1995). The party offering the statement into evidence bears the "formidable burden" of meeting the requirements of Rule 804(b)(3). *United States v. MacDonald*, 688 F.2d 224, 233 (4th Cir. 1982).

In this case, there is no dispute that the proffered hearsay statements meet the

last two requirements. The declarants who spoke with Special Agent Torre made statements that were clearly adverse to their penal and proprietary interests when they disclosed to him their illegal immigration status and their participation in obtaining Virginia driver's licenses or identification cards by fraudulent means. Specifically, the declarants' statements concerning their illegal immigration status exposed them to deportation and possible criminal prosecution. *See* 8 U.S.C. § 1325. And, their statements concerning their out-of-state residence and purpose in traveling to Virginia exposed them to criminal prosecution for document fraud under state and federal law. *See* 18 U.S.C. § 1028; Va.Code §§ 46.2–105, 46.2–348. Nor is there any doubt as to the reliability of the declarants' statements; the circumstances, including that the declarants spoke little or no English, possessed only foreign passports, and were driven to the DMV in vehicles with out-of-state license plates, provided ample corroboration.

■ It is the first requirement—the unavailability of the declarants—that is in dispute. A declarant is "unavailable" at a hearing or trial when she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... or testimony[ ] by process or other reasonable means." Fed. R.Evid. 804(a)(5). Courts have consistently held that hearsay exceptions premised on the unavailability of a witness require the proponent of a statement to show a good faith, genuine, and bona fide effort to procure a witness's attendance. *See Barber v. Page*, 390 U.S. 719, 724, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *United States v. Mathis*, 550 F.2d 180 (4th Cir.1976).[1] Courts considering whether a prosecutor, as the proponent of a statement, has made such a good faith effort have focused on the reasonableness of the prosecutor's efforts.[2] The issue here is whether the government has demonstrated the required good-faith effort to procure the declarants' attendance at trial.

These principles, applied here, point persuasively to the conclusion that the government failed to take reasonable steps to procure the declarants' attendance at trial. Simply put, the investigating Special Agent did not obtain, as apparently he might have, the names and addresses of the declarants so that they could be served with trial subpoenas. Given this omission, the government's efforts to procure the declarants' attendance at trial cannot be said to have been reasonable. To conclude otherwise would create a perverse incentive for law enforcement officials conducting investigations to attempt an end run around the hearsay rule by failing to obtain identifying information from potential witnesses, with the aim of having the witnesses' statements come into evidence under a hearsay exception and thus escape cross-examination.

While no published authority on point has been found, analogous cases reaching the opposite result support the conclusion reached here. In *United States v. Rivera*, the Fourth Circuit found that illegal alien witnesses who had been deposed, but then

---

1. Even in cases where the absent witness is a foreign national who cannot be found in the United States and is thus beyond the court's subpoena power under Fed.R.Crim.P. 17(e) and 28 U.S.C. § 1783, "the government must show diligent effort on its part to secure the [witness's] voluntary return to testify." *Government of the Virgin Islands v. Aquino*, 378 F.2d 540, 551 (3d Cir.1967).

2. *See, e.g., Roberts*, 448 U.S. at 74, 100 S.Ct. 2531 ("The lengths to which the prosecutor must go to produce a witness ... is a question of reasonableness. The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.").

had voluntarily left the country, were "unavailable" within the meaning of the Rule. 859 F.2d 1204, 1207 (4th Cir.1988). Similarly, in *United States v. Winn*, the Ninth Circuit determined that illegal aliens who had been deported were "unavailable" for purposes of the hearsay rules. 767 F.2d 527, 530 (9th Cir.1985). Although *Rivera* and *Winn* involved the testimony of illegal aliens who could not be produced at trial, they include a significant distinction that confirms the soundness of the result reached here. Both *Rivera* and *Winn* involved circumstances where the prosecution knew who the aliens were, but other established, lawful procedures—deportation in one case and voluntary departure in the other—made it so the aliens could not be produced at trial. Of course, it could be that some of the aliens interviewed by Special Agent Torre would be similarly unavailable, but it is impossible to know because the their identifying information was never recorded. In this case, unlike *Rivera* and *Winn*, the government made no effort to identify or contact the persons interviewed and seeks to avoid the conclusion reached here by contending that such an effort would have been futile. In this regard, the prosecution argues that the inquiry should end because "[t]he law does not require the doing of a futile act." *Roberts*, 448 U.S. at 74, 100 S.Ct. 2531 (1980). The obvious flaw in this argument is that the so-called futility is of the government's own making. Simply put, where, as here, the reason for a declarant's unavailability as a witness is that the party offering the out-of-court statement made no effort to identify the declarant, there has been no good faith effort to obtain that declarant's testimony and the hearsay exception for statements against interest may not be invoked.