**UNITED STATES of America**

v.

**Tyrone SMALLWOOD, Thomas Edward Smith, Jr.**

No. CRIM. 03–245–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 13, 2004.

Brian D. Miller, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Thomas Abbenante, Washington, DC, Lana Manitta, Marin, Arif, Petrovich & Walsh, Springfield, VA, Ivan Darnell Davis, Office of the Federal Public Defender, Frank Salvato, Alexandria, VA, for Defendants.

### MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this prosecution of two defendants for murder and use of a firearm while engaged in a drug conspiracy in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 924(c) & (j) is whether certain statements made by the murder victim to his sister, brother, and roommate on the day of the murder are admissible pursuant to an exception to the hearsay rule.

### I.

Defendants Tyrone Smallwood and Thomas Edward Smith, Jr. were indicted and now face trial for the February 11, 1996 murder of Conrad Shelton in Washington, D.C., a murder they allegedly committed while engaged in drug trafficking. Both defendants are also charged with the use of a firearm in connection with a drug conspiracy and Smith is additionally charged with conspiring to traffic in

drugs.[1] For a more detailed statement of the facts underlying the alleged drug conspiracy and murder of Shelton, see *United States v. Smallwood*, 293 F.Supp.2d 631 (E.D.Va.2003) (denying defendants' motion to transfer venue, denying defendants' motion to dismiss § 924(c) charge, and deferring ruling on defendants' motion to suppress statements pending further hearing). Only the facts pertinent to the government's motion in limine to admit Shelton's statements on the day of the murder need be recounted here.

The Indictment alleges that Smallwood and Smith, also known as "Billy Q," were members of a drug trafficking conspiracy that engaged in manufacturing and distributing crack cocaine and other illegal narcotics in the District of Columbia, Maryland, Virginia, and elsewhere between 1994 and 1998. More than a dozen co-conspirators, including defendants' main drug supplier, have been successfully prosecuted in this district for their roles in the drug conspiracy.[2] Moreover, one co-conspirator, Anthony Brown, pled guilty to aiding and abetting the murder of Shelton while engaged in a crack cocaine distribution conspiracy in violation of 18 U.S.C. § 848(e)(1)(A). *See United States v. Brown,* Criminal No. 03–612–A, 82 Fed. Appx. 301 (E.D.Va.2003) (Plea Agreement).

The government alleges that Smallwood and Smith became acquainted with Shelton when they hired him to perform cleaning and repair jobs at their Washington, D.C. apartment, located at 50 49th St., N.E. The government also alleges that Smallwood and Smith, believing that Shelton had stolen drugs and money from their apartment, instructed Shelton to meet them at 3 p.m. on February 11, 1996. Shelton complied with this instruction and met the defendants in the afternoon on February 11. According to the Indictment, once at defendants' apartment, Smallwood and Smith severely beat Shelton. Brown, who was also present at the apartment, described the events of that afternoon and evening in the course of his plea colloquy. Specifically, it appears that Brown received a telephone call from Smallwood requesting that Brown come to defendants' Washington, D.C. apartment. Shortly after Brown arrived at the apartment, the four individuals—Smallwood, Smith, Brown, and Shelton—traveled in a rental car, driven by Smallwood, in the direction of an alley near the corner of 5th and O Sts., N.W. Along the way, Smallwood and Smith stopped at a gas station to purchase a soft drink while Brown remained in the car with Shelton. Once they arrived at the alley, defendants led Shelton down the alley and shot him more than a dozen times,[3] ultimately killing him. Brown remained in the car to act as "lookout." He claims he observed Smallwood and Smith kill Shelton.

The government now seeks to offer into evidence in its case-in-chief the following testimony of Shelton's sister, brother, and roommate as to Shelton's statements either made to them or overheard by them on the day of the murder:

---

1. Smallwood is not charged with the drug conspiracy offense because he pled guilty to this offense in the United States District Court for the District of Columbia in November 1996. *See United States v. Smallwood*, Criminal No. 96–341–02 (D.D.C. November 14, 1996) (Plea Agreement).

2. *See, e.g., United States v. Jerry Booker,* Criminal No. 98–452–A (E.D.Va. January 21, 1999)

(Plea Agreement); *United States v. Walter Fleming,* Criminal No. 98–452–A (E.D.Va. March 5, 1999) (Plea Agreement).

3. While both defendants shot at Shelton, it appears that Smith also accidentally shot Smallwood in the foot.

(1) Shelton's roommate's testimony that he observed that Shelton was nervous on the day of the murder.

(2) Shelton's sister's testimony that she overheard Shelton having a loud and heated telephone conversation, apparently with someone Shelton called "Ty."

(3) Shelton's sister's testimony that she overheard Shelton say that he would meet "Ty" at the Shrimp Boat, a restaurant near defendants' Washington, D.C. apartment, and promised he "would be there."

(4) Shelton's brother's testimony that Shelton asked him for a ride to "Ty's" apartment because he had to go see Ty and Billy Q.

(5) Shelton's roommate's testimony that Shelton said he was going to "Ty and them's place" and that "Ty and them" told him to be there at 3:00 p.m., not 2:59 or 3:01.

(6) Shelton's roommate's testimony that Shelton said he was going to "Ty and them's place" to avoid anyone else being hurt.

(7) Shelton's roommate's testimony that Shelton said he was going to die.

(8) Shelton's roommate's testimony that Shelton said he had to go see "Ty and them" because they were angry that he had stolen drugs from them. Specifically, Shelton said, "damn they mad at me, Ty and them."

(9) Shelton's roommate's testimony that Shelton said he had stolen cocaine from "Ty" and had planned on robbing the defendants, but that "Ty" had learned of the theft and the planned robbery.

Thus, the question presented is whether any of this testimony constitutes hearsay and, if so, whether it is excluded by the hearsay rule, Rules 801 & 802, Fed. R.Evid., or is instead admissible pursuant to an exception to that rule.[4] Also at issue is whether any of this testimony, if it is admissible, must nonetheless be excluded pursuant to Rule 403, Fed.R.Evid.[5]

## II.

### a. Statement (1)

■■■■ Federal Rules of Evidence 801 & 802 provide that hearsay statements are not admissible evidence and define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801, Fed.R.Evid.; *see also Barone*, 114 F.3d at 1292 ("The out-of-court statements of a non-testifying declarant ordinarily are excluded as hearsay if offered to prove the truth of the matter asserted."). Given this definition, it is clear that Shelton's roommate's testimony that Shelton appeared nervous on the day of the murder is not hearsay because it is not an out-of-court

---

**4.** Rules 803 & 804, Fed.R.Evid., set forth various exceptions to the general hearsay rule so as to "permit courts to admit certain statements that bear indicia of reliability and trustworthiness." *United States v. Barone*, 114 F.3d 1284, 1292 (1st Cir.1997). Rule 803, Fed.R.Evid., exempts certain statements from the hearsay rule "even though the declarant is not available as a witness," whereas Rule 804, Fed., R. Evid., requires a showing of the declarant's unavailability.

**5.** Rule 403, Fed.R.Evid. provides that evidence may be excluded if its "probative value

is substantially outweighed by the danger of unfair prejudice." *See* Rule 403, Fed.R.Evid. advisory committee's note (defining "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); *United States v. Lentz*, 58 Fed. Appx. 961, 965, 2003 U.S.App.LEXIS 2062, at *9 (4th Cir. 2003) (same); *United States v. Ramsey*, 1998 WL 453855, *2, 1998 U.S.App. LEXIS 16994, at *4 (4th Cir. July 24, 1998); *United States v.*

statement by a non-testifying declarant offered to prove the truth of the statement; it is, instead, simply a statement of a testifying declarant as to that declarant's observations, *i.e.* Shelton's nervousness. As such, it is not excludable hearsay. *See Ross v. St. Augustine's College*, 103 F.3d 338, 342 (4th Cir.1996) ("Statements that contain direct observations of the physical appearance and actions of another person are not hearsay at all, but rather direct evidence of the facts in question."). Additionally, it is worth noting that the "state of mind" hearsay exception would apply were the roommate to testify that he was told by Shelton, or overheard Shelton say, that he, Shelton, was nervous. *See* Rule 803(3), Fed.R.Evid.[6] This exception to the general hearsay rule provides that a hearsay statement is admissible if it bears on the declarant's existing state of mind as long as it is not a "statement of memory or

belief to prove the fact remembered or believed."[7] The exclusion of statements of memory or belief from the exception is necessary to prevent the exception from swallowing the hearsay rule altogether.[8] Notably, only those statements made contemporaneously with the declarant's state of mind are covered by the Rule 803(3) state of mind exception.[9] This contemporaneity requirement ensures the statement's reliability. *See Secor*, 73 Fed. Appx. at 556, 2003 U.S.App.LEXIS 16367, at *30 (stating that the contemporaneity requirement ensures that the declarant does not have time to reflect and fabricate).

In sum, the roommate's testimony that he observed Shelton to be acting nervously on the day of the murder is not hearsay and is admissible as this evidence has no "undue tendency to suggest decision on an improper basis," and hence, its probative

---

*Blackwood*, 913 F.2d 139, 144 (4th Cir.1990) (same).

**6.** Rule 803(3), Fed.R.Evid., provides as follows:

> The following are not excluded by the hearsay rule... (3) A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

**7.** *See, e.g., United States v. Gartman*, 1995 WL 265925, *4, 1995 U.S.App. LEXIS 10531, at *23 (4th Cir. May 9, 1995) (admitting an assault victim's statements that she feared the defendant two weeks prior to the assault); *United States v. Joe*, 8 F.3d 1488, 1491 (10th Cir.1993) (admitting a murder victim's statements that she feared her killer); *United States v. Green*, 680 F.2d 520, 523 (7th Cir. 1982) (admitting a victim's statements indicating that she was nervous and upset prior to her murder).

**8.** *See* Rule 803(3), Fed.R.Evid. advisory committee's note ("The exclusion of 'statements of

memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."); *Boliek v. Missouri*, 479 U.S. 903, 905, 107 S.Ct. 302, 93 L.Ed.2d 276 (1986); *Shepard v. United States*, 290 U.S. 96, 105–106, 54 S.Ct. 22, 78 L.Ed. 196 (1933) ("Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored."); *Sea Marsh Group, Inc. v. SC Ventures, Inc.*, 1997 WL 173232, **7–8, 1997 U.S.App. LEXIS 6739, at *23 (4th Cir. April 11, 1997).

**9.** *See United States v. Secor*, 73 Fed. Appx. 554, 566, 2003 U.S.App.LEXIS 16367, at *30 (4th Cir.2003) (excluding hearsay statements not made contemporaneously with the declarant's state of mind); *Sea Marsh Group, Inc.*, 1997 WL 173232, **7–8, 1997 U.S.App. LEXIS 6739, at *23 ("[T]he rule permits the introduction of only those statements made more or less contemporaneously with the genesis of the state of mind, emotion, sensation, or phys-

value is not outweighed by any unfair prejudice. Rule 403, Fed.R.Evid. advisory committee's note; *see also U.S. v. Lentz,* 58 Fed. Appx. 961, 965, 2003 U.S.App.LEXIS 2062, at *9 (4th Cir.2003) (defining "unfair prejudice" based on the advisory committee's note to Rule 403); *Ramsey,* 1998 WL 453855, *1, 1998 U.S.App. LEXIS 16994, at *4 (same); *Blackwood,* 913 F.2d at 144 (same).

### b. Statement (2)

■ Shelton's sister's testimony that she overheard Shelton having a loud and heated telephone conversation on the day of the murder is also not hearsay if offered solely to prove that she observed and heard Shelton engaging in a loud telephone conversation in which Shelton appeared angry or heated. *See Ross,* 103 F.3d at 342. Yet, the hearsay rule does come into play if, as appears to be the case, the government offers this testimony to prove that Shelton was in fact speaking to Smallwood in this telephone conversation. Offered for that purpose, the sister's testimony would be hearsay because it is an out-of-court statement by a non-testifying declarant (Shelton) offered to prove the truth of the matter asserted, namely that Shelton was actually speaking to Smallwood. *See, e.g., United States v. Hernandez,* 1998 WL 841504, *2, 1998 U.S.App. LEXIS 30859, at *5 (4th Cir. December 7, 1998) (finding that a witness' testimony was inadmissible hearsay because it was "an out-of-court statement offered to prove the truth of the matter asserted").

The conclusion that this testimony is hearsay if offered to prove that Shelton was in fact speaking to Smallwood is confirmed by the unreliability of such testimony in the absence of an opportunity to cross-examine the declarant—Shelton. Thus, Shelton, when he used the name "Ty," might have been speaking to someone else about Smallwood, or he might have been talking to someone other than Smallwood who was also named Ty, or, conceivably, Smallwood may have been faking the entire conversation to create the impression he was speaking with Smallwood, when in fact there was no one or someone other than Smallwood on the other end of the telephone line. Only an opportunity to cross-examine Shelton would allow defendants a fair opportunity to probe whether Shelton was in fact speaking to Smallwood.

Accordingly, Shelton's sister may testify that she overheard Shelton having a loud and heated telephone conversation on the day of the murder, but she may not testify that she overheard Shelton speaking with "Ty" in this conversation.[10]

### c. Statements (3)-(6)

Statements (3)—(6) may be grouped for purposes of this evidentiary analysis as each is a statement made by Shelton on the day of his murder that he intended to meet the defendants that afternoon and each is offered to prove Shelton's intention and that he acted in conformity with his intention.

Rule 803(3) makes explicit that statements of a declarant's intent or plan come within the exception to the hearsay rule for statements of then existing state of

---

ical condition of which the statement is thought to be probative.").

**10.** A different result might obtain if, as is not true here, the sister's testimony that she overheard the name "Ty" was merely being offered to prove that Shelton knew someone named Ty. In that event, the testimony would be offered solely to show that the sister overheard Shelton say "Ty" and not that Shelton was actually speaking with Smallwood. *See, e.g., United States v. Pratt,* 239 F.3d 640, 644 (4th Cir.2001) (finding that an out-of-court statement not intended to prove the truth of the matter asserted is not hearsay and hence not excluded by the hearsay rule).

mind. *See* Rule 803(3), Fed.R.Evid.; *see also Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554, 566 (4th Cir.1994) ("Under 803(3) a statement of the declarant's then-existing state of mind including his intent, plan, or motive, is not excluded by the hearsay rule."); *United States v. Jenkins*, 579 F.2d 840, 842 (4th Cir.1978) (admitting testimony of a declarant's statement of intent under Rule 803(3)). Moreover, the pertinent Advisory Committee's note, as well as authority in this and other circuits, makes clear that a declarant's statements of intent may also be used " 'to prove subsequent conduct in conformity with [the declarant's] stated intention . . . .' " *Phoenix Mutual*, 30 F.3d at 566 (*citing Phoenix Mutual Life Insurance Co. v. Adams*, 828 F.Supp. 379, 389 (D.S.C. 1993)).[11] This doctrine derives from the Supreme Court's now familiar ruling in *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706, that letters written by a declarant prior to his death indicating his intention to travel through southern Kansas to camp at Crooked Creek may be admitted to show that the declarant in fact traveled to Crooked Creek. *See id.* at 295, 12 S.Ct. 909; *see also Jenkins*, 579 F.2d at 843 (applying *Hillmon*). Importantly, the caselaw also makes clear that the Rule 803(3) exception includes only statements of the declarant's state of mind and not corollary statements of "the factual occurrences engendering that state of mind." *Lentz*, 282 F.Supp.2d at 416; *see also United States v. Tome*, 61 F.3d 1446, 1454 (10th Cir.1995); *Joe*, 8 F.3d at 1492.[12]

Thus, pursuant to Rule 803(3) and the *Hillmon* doctrine, statements (3) and (4) are admissible in their entirety to show that Shelton intended to meet the defendants on the day of his murder and that he in fact did so.[13] Statements (5)

11. *See also* Rule 803(3), Fed.R.Evid. advisory committee's note; *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 295, 12 S.Ct. 909, 36 L.Ed. 706 (1892) ("The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact, as his own testimony that he then had that intention would be."); *Jenkins*, 579 F.2d at 842–43 (holding that testimony of a declarant's statement of intent that "I'm on my way," was admissible under Rule 803(3)); *United States v. Donley*, 878 F.2d 735, 738 (3d Cir.1989) ("Statements admitted under Fed.R.Evid. 803(3) to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan."); *United States v. Pheaster*, 544 F.2d 353, 376 (9th Cir.1976) (same); *United States v. Calvert*, 523 F.2d 895, 910 (8th Cir.1975) (same); *United States v. Lentz*, 282 F.Supp.2d 399, 408 (E.D.Va.2002) (same); *cf. United States v. Hartmann*, 958 F.2d 774, 783 (7th Cir.1992) (admitting declarant's statement of fear as evidence that declarant was not likely to have voluntarily engaged in certain actions).

12. While not directly relevant here, it is also worth noting that statements of intent may be admitted under the Rule 803(3) exception and the *Hillmon* doctrine "only to prove [the declarant's] future conduct, not the future conduct of another person." Rule 803(3), Fed. R.Evid. advisory committee's note; *see also Jenkins*, 579 F.2d at 843 ("Approving the Rule [803(3)] in its submitted form, the Congress directed only that it be construed to confine the doctrine in *Hillmon* so that statements of intent by a declarant would be admissible only to prove the *declarant's* future conduct, not the future conduct of others." (citing H.R.Rep. No. 650, 93d Cong., 1st Sess. 13–14 (1973))); *Pheaster*, 544 F.2d at 376 (declining to admit decedent's statement of intent because it required "that the trier of fact infer from the state of mind of the declarant the probability of a particular act not only by the declarant but also by the other person.").

13. With regard to statement (3), it is worth noting that the statement is admissible in its entirety if, as it appears, the sister will testify either that Shelton said (i) "Ty, I will · meet you at the Shrimp Boat," or (ii) "I will meet Ty at the Shrimp Boat." Yet, if the sister will testify that Shelton merely said "I will meet you at the Shrimp Boat," and the sister concluded based on other references to "Ty" dur-

and (6), however, are admissible pursuant to this hearsay exception only in part. Shelton's roommate's testimony with regard to both statements that Shelton said he was going to "Ty and them's place" is admissible to show Shelton's intention to meet the defendants and his conformity with that intention. The remaining portions of statements (5) and (6) are excluded by the hearsay rule because these portions merely show the factual circumstances giving rise to Shelton's intent and hence are not admissible pursuant to Rule 803(3), the *Hillmon* doctrine, or any other hearsay exception.[14] *See Tome*, 61 F.3d at 1454; *Joe*, 8 F.3d at 1492; *Lentz*, 282 F.Supp.2d at 416. Assuming *arguendo* that Shelton's statement that he intended to go to "Ty and them's place" to avoid anyone else being hurt (statement (6)) fell within a hearsay exception, this statement would nonetheless be inadmissible under Rule 403, Fed.R.Evid., because its "probative value is substantially outweighed by the danger of unfair prejudice." Rule 403, Fed.R.Evid.; *see also Lentz*, 58 Fed. Appx. at 964–65, 2003 U.S.App.LEXIS 2062, at *9 (excluding statements under Rule 403 even though the statements qualified to be admitted under a hearsay ex-

ception.); *United States v. Day*, 591 F.2d 861, 883 n. 40 (D.C.Cir.1978) (internal quotation marks omitted) (finding that "statements made by a victim of a homicide which inferentially implicate the defendants" present substantial prejudicial dangers).

#### d. Statement (7)

■ The government also cites Rule 803(3) as the basis for admitting Shelton's roommate's testimony that Shelton said he, Shelton, was going to die on the day of his murder. Yet, Shelton's statement to this effect reflects his opinion or belief about future events; it does not bear on his existing state of mind and thus does not fall within the Rule 803(3) exception. *See Lentz*, 282 F.Supp.2d at 416 (holding that a statement showing the declarant's belief as to the defendant's actions to be taken in the future is not admissible under Rule 803(3)); *cf. United States v. Walker*, 1995 WL 551361, *4, 1995 U.S.App. LEXIS 26457, at *11 (4th Cir. September 18, 1995) (admitting declarant's statement that he was afraid for his family under Rule 803(3)). Thus, because the statement does not come within this or any other exception to the hearsay rule, it is inadmissible.[15] Even assuming *arguendo* that Shel-

---

ing the conversation that Shelton was speaking to "Ty" and meant that he would meet "Ty" at the Shrimp Boat, then the statement would include inadmissible hearsay. In this event, a portion of the statement would be admissible only to show that Shelton intended to meet the person with whom he was speaking.

**14.** Were Shelton alive and available, he could, of course, testify that "Ty and them" told him to be there at 3:00 p.m. (statement (5)) because defendants' statements qualify as admissions admissible pursuant to Rule 801(d)(2), Fed.R.Evid. Shelton's roommate's testimony regarding "Ty and them's" instruction, however, is "hearsay within hearsay" such that a hearsay exception must exist both for "Ty and them's" instruction and Shelton's statement repeating that instruction. *See*

Rule 805, Fed.R.Evid. ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."). Because Shelton's statement repeating the instruction does not come within an exception to the hearsay rule, that portion of statement (5) is inadmissible.

**15.** In its initial motion, the government sought to admit the following additional statements also made on the day of Shelton's murder under Rule 803(3):

(i) Shelton's statement to his brother that if anything ever happened to him, Ty and Billy Q. were responsible.

(ii) Shelton's statement to his roommate that "Ty and them" are going to kill me.

ton's statement that he was going to die fell within an exception to the hearsay rule, such a statement would be inadmissible under Rule 403 as it has minimal probative value, but substantial likelihood of unfair prejudice. *See* Rule 403, Fed. R.Evid.; *Lentz*, 58 Fed. Appx. at 964–65, 2003 U.S.App.LEXIS 2062, at *9 (applying Rule 403 to statements admissible under a hearsay exception); *Day*, 591 F.2d at 883 (same); *Lentz*, 282 F.Supp.2d at 416 (excluding, for example, declarant's statement that "if anything ever happens to me—Jay did it," under Rule 403).

### e. Statements (8) and (9)

■ Statements (8) and (9) may be analyzed together as each statement bears on defendants' motive to kill Shelton. The government contends these statements are admissible in their entirety because the cases hold that any statement by a declarant bearing on defendants' motive to kill is admissible under Rule 803(3), Fed.R.Evid. Yet, the government's authority cannot bear the weight of the government's argument. Closely read, the government's authority at most holds that statements of a declarant's then existing state of mind bearing on a defendant's motive to kill may be admitted because such statements (i) fall within an exception to the hearsay rule, namely Rule 803(3), and (ii) are relevant to the prosecution's murder allegation.[16] This authority does not hold, as the government contends, that any statement bearing on defendants' motive to kill is admissible under Rule 803(3); such a conclusion would inappropriately expand the scope of the exception. Put differently, all out-of-court statements of a declarant relating to motive do not reflect the defendant's state of mind; some do and many do not. So the essential threshold admissibility inquiry is whether the statement reflects the declarant's state of mind. If so, then the statement is not excludable as

---

(iii) Shelton's statement to his roommate that if he did not go meet "Ty and them," they would come to kill him and others. (iv) Shelton's statement to his roommate that if he did not return from his meeting with "Ty and them" after three hours, he was dead.

In a supplemental motion, however, the government, with good reason, elected not to offer these statements that directly implicated defendants in Shelton's murder. They are all expressions of opinion or belief by Shelton and are thus inadmissible hearsay. Moreover, controlling caselaw makes clear that even if these statements were to fall within an exception to the hearsay rule, they would be inadmissible under Rule 403, Fed.R.Evid. *See Lentz*, 58 Fed. Appx. at 964–65, 2003 U.S.App.LEXIS 2062, at *9; *see also Day*, 591 F.2d at 883.

16. *See United States v. Tokars*, 95 F.3d 1520, 1535 (11th Cir.1996) ("[W]e conclude that, at least when relevant to the motive to kill, evidence of the victim's state of mind is admissible under Federal Rule of Evidence 803(3)."); *Hartmann*, 958 F.2d at 783 (finding that a decedent's statement of intention to change the beneficiaries of his life insurance policy was admissible under Rule 803(3) and could show that defendants had a motive to kill him before he made the change); *United States v. DiNome*, 954 F.2d 839, 846 (2d Cir. 1992) (finding that declarant's statement that he intended to see an attorney regarding defendant's illegal exportation business was admissible under Rule 803(3) and could show defendant's motive to kill); *Donley*, 878 F.2d at 738 (finding that a decedent's statement of intent to separate from her husband was admissible under Rule 803(3) and could show defendant's motive to kill her); *Calvert*, 523 F.2d at 910 (finding that a declarant's statement of intent to get out of a business partnership with the defendant was admissible under Rule 803(3) and could establish a motive to kill); *United States v. Ealy*, 2002 WL 273317, **1–2, 2002 U.S. Dist. LEXIS 3255, at *4–5 (W.D.Va. February 26, 2002) (finding that a declarant's statement of intent to testify against defendants in a drug case was admissible under Rule 803(3) and could show defendants' motive to kill). Although the Fourth Circuit has not yet addressed this issue, it would agree with the holdings of its sister circuits.

588

hearsay and the fact that the statement bears on motive provides the relevance necessary for admissibility.

In this instance, statements (8) and (9) are not statements of Shelton's state of mind, nor do they become so simply because they bear on the issue of defendants' motives. Instead, this hearsay testimony reflects only Shelton's opinion regarding defendants' anger and motives. As such, this testimony is inadmissible, except for that portion of Shelton's roommate's testimony that Shelton said he had to go see "Ty and them" (statement (8)). This portion is admissible pursuant to Rule 803(3) and the *Hillmon* doctrine to show Shelton's intention to meet "Ty and them" and as evidence that he acted in conformity with this intention; in other words, that he did meet with "Ty and them." [17]

■ Furthermore, the portions of statements (8) and (9) in which Shelton admits that he had stolen drugs from the defen-

dants and had plans to rob them are admissible under the exception for statements against a declarant's penal interest. *See* Rule 804(b)(3), Fed.R.Evid.[18] Controlling caselaw makes clear that hearsay statements may be admitted under Rule 804(b)(3) if (i) the declarant is "unavailable," (ii) the statement is genuinely adverse to the declarant's penal interest, and (iii) corroborating circumstances clearly indicate the trustworthiness of the statement. *United States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir.1995); *United States v. MacDonald*, 688 F.2d 224, 233 (4th Cir. 1982); *United States v. Wrenn*, 170 F.Supp.2d 604, 606 (E.D.Va.2001). All three requirements are satisfied in this instance: (1) Shelton is "unavailable" to testify because he has been murdered;[19] (2) Shelton's statements are adverse to his interests;[20] and (3) sufficient corroboration exists given that Shelton repeated the statement and had no reason to lie.[21]

17. *See supra* note 8 and accompanying text.

18. Rule 804(b)(3), Fed.R.Evid., provides an exception to the hearsay rule for:

[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

19. *See* Rule 804(a)(4), Fed.R.Evid. (" 'Unavailability' as a witness includes situations in which the declarant is unable to be present or to testify at the hearing because of death ...").

20. *See United States v. Holmes*, 30 Fed. Appx. 302, 308, 2002 U.S.App.LEXIS 4581, at *14–15 (4th Cir.2002) (finding that a declarant's statement to his fellow inmate that he participated in bank robberies qualified as a statement against interest under Rule 804(b)(3)); *United States v. Johnson*, 219 F.3d 349, 356 n. 4 (4th Cir.2000) (stating that the district court

admitted a declarant's statements to his co-conspirator regarding his involvement in a murder pursuant to Rule 804(b)(3)); *United States v. Hamilton*, 19 F.3d 350, 357 (7th Cir.1994) (finding that a declarant's statement to his cellmate that he and the defendant robbed a bank was admissible under Rule 804(b)(3)).

21. Although courts have not described the precise nature of the corroboration requirement, courts have set forth six factors to consider when determining whether sufficient corroboration exists to apply Rule 804(b)(3), Fed.R.Evid., including the following:

(1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question.

Nonetheless, the remaining portions of statements (8) and (9) are excluded by the hearsay rule. Shelton's roommate may not testify that defendants were angry with Shelton or that Smallwood had learned of the theft and robbery because these statements are out-of-court statements by a non-testifying declarant (Shelton) offered to prove the truth of the matters asserted, namely that defendants believed that Shelton has stolen drugs and money from them and were angry with him as a result. Moreover, these portions of statements (8) and (9) do not come within any hearsay exception.

### III.

In sum, statement (1) is not hearsay and thus is not excluded by the hearsay rule. Statement (2) is admissible in part and excluded in part. More specifically, the portion of statement (2) in which Shelton's sister testifies that she overheard Shelton speaking on the telephone is admissible while the portion of the statement in which she testifies that Shelton was speaking to "Ty" must be excluded. Statements (3) and (4) are admissible in their entirety pursuant to Rule 803(3) and the *Hillmon* doctrine.[22] *See Hillmon,* 145 U.S. at 295, 12 S.Ct. 909. The portion of statements (5) and (6) indicating Shelton's intent to meet the defendants is also admissible under Rule 803(3) and the *Hillmon* doctrine, while the remaining portions of the statements, in which Shelton says defendants told him to be there at 3 p.m. and that he was meeting defendants to avoid anyone else being hurt, are excluded by the hearsay rule and do not come within any of its exceptions. Statement (7) is excluded by the hearsay rule and does not come within any of its exceptions. The portion of statement (8) in which Shelton's roommate testifies that Shelton said he had to go see defendants is also admissible pursuant to Rule 803(3) and the *Hillmon* doctrine. The portions of statements (8) and (9) .in which Shelton's roommate testifies regarding the drug theft and robbery are admissible pursuant to Rule 804(b)(3) as statements against declarant's penal interest, but the remaining portions of statements (8) and (9) are excluded.

Defendants argue that all of Shelton's statements must be excluded because his statements are unreliable on the ground that Shelton's autopsy report revealed cocaine metabolites in Shelton's blood at the time of his murder. Yet, defendants' argument must be rejected because Supreme Court authority makes clear that courts must not engage in an assessment of reliability when a statement comes within a "firmly rooted" hearsay exception.[23] *See Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Because Rule 803(3) is a "firmly rooted" exception,[24] defendants' contention that the

See *Bumpass,* 60 F.3d at 1103; *United States v. Brainard,* 690 F.2d 1117, 1125 (4th Cir. 1982).

22. *See supra* note 13.

23. *See White v. Illinois,* 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) ("And as we have also noted, a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability."); *Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ("Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements.").

24. *See Hayes v. York,* 311 F.3d 321, 325 (4th Cir.2002); *Mixion v. Attorney General of North Carolina,* 1998 WL 80148, *1, 1998 U.S.App. LEXIS 3110, at *2 (4th Cir. February 26, 1998).

statements admitted pursuant to this exception are unreliable because Shelton was under the influence of cocaine is improper. Such evidence is relevant only to the weight to be given to the statements by the trier of fact, not to their admissibility. *See United States v. Squillacote,* 221 F.3d 542, 564 (4th Cir.2000). Moreover, although controlling authority has not yet determined whether the exception for statements against penal interest is "firmly rooted," [25] the Supreme Court has also made clear that "the very fact that a statement is genuinely self-inculpatory—which our reading of Rule 804(b)(3) requires—is itself one of the 'particularized guarantees of trustworthiness'" such that courts determining the admissibility of statements under Rule 804(b)(3) need not make a separate finding of reliability.[26] *See Williamson,* 512 U.S. at 605, 114 S.Ct. 2431.

An appropriate order will issue.

---

**25.** *See Williamson v. United States,* 512 U.S. 594, 605, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) ("[W]e need not decide whether the hearsay exception for declarations against interest is 'firmly rooted' for Confrontation Clause purposes."); *United States v. Taylor,* 1999 WL 617896, **11–12, 1999 U.S.App. LEXIS 19239, at *29 (4th Cir. Aug. 16, 1999) (indicating that a circuit split exists regarding whether statements against penal interest qualify as a firmly rooted hearsay exception, but not reaching a decision on the issue); *United States v. Pabellon,* 1999 WL 305052, *6 n. 8, 1999 U.S.App. LEXIS 9201, at *19 n. 8 (4th Cir. May 14, 1999) (same).

**26.** In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court held that a statement bears sufficient indicia of reliability and hence may be admitted pursuant to an exception to the hearsay rule if (i) it falls within a "firmly rooted" exception or (ii) it has "particularized guarantees of trustworthiness." *Id.* at 65–66, 100 S.Ct. 2531.